Good morning. Our first case this morning is Andrew Panico, am I pronouncing that correctly? Yes, you are, Your Honor. v. Portfolio Recovery Associates, LLC. Mr. Stern, are you ready to proceed? I am, Your Honor. May it please the Court, Philip Stern on behalf of the plaintiff appellant Andrew Panico. This case is about a debt buyer's practice of buying and suing on debts governed by Delaware law, but after Delaware's limitation period has lapsed. The limited question presented is whether PRA, Portfolio Recovery Associates, proved an avoidance of the statute of limitations based on Delaware's tolling statute. Now when, do we know, does the record indicate when Portfolio Recovery Associates or PRA obtained or the assignment of the debt from the credit card company? I don't believe that's in the record. Okay, all right. Is that significant at all? It's not significant. Our position is that Portfolio stands in the shoes of the original creditor or can have no greater rights than the creditor, so it's subject to whatever the rights the creditor had. But PRA could not have sued in Delaware by virtue of the Fair Debt Collection Practices Act, I take it. Is that your position? My position, yes. Because it's a debt collector, it had to sue Mr. Panico in his form, his home form? That's correct. All right. Unless the contract was signed in Delaware and we don't have the information about that in the record, correct? That's correct. But also I think the nature of credit card transactions are such that, I think under state law, they're generally viewed that each transaction is an independent contract. And so therefore there really is no signing of a contract as there would be in a loan situation where you'd be signing a promissory note. So I don't think that even if there was a signing of, say, like an account opening, an account application. Defense counsel relies... I'm sorry. Will you say, sir? I'm sorry. Defense counsel relies on the Saudi basic case. How do you distinguish your situation from that one? Well, it's not so much that it's distinguishable. Actually, none of the Delaware cases deal with the issues that are presented here. They provide a good backdrop. And our position is Saudi basics is just the latest pronouncement from the Delaware Supreme Court in a long line of cases that have clearly said that, unlike what the district court concluded, is that the statute is not applied literally. Where we differ with respect to reading Saudi basics is Saudi basics' entire discussion of the tolling statute consists of two sentences in a single paragraph. And portfolio just refers to and quotes the first sentence. But the second sentence is equally important. To me, there was an issue in this matter that nobody seemed to focus on, and that is the forum selection clause. I mean, there's a choice of law provision, but there's also a forum selection clause that says litigation has to be in the courts of Delaware. And there's plenty of authority that says a forum selection clause is sufficient to confer personal jurisdiction. Yet the Supreme Court in the Carnival Cruise Lines case say even in a ticket to go on a cruise ship, that's enough to say somebody in the state of Washington is subject to suit in Florida. Why isn't the forum selection clause here sufficient to say that Panico was always subject to being served pursuant to the long arm statute of Delaware? We agree that he was always subject to it. Then how do you reconcile that stipulation number 16, I think it is, that says that Panico is not subject to personal jurisdiction in Delaware? And I'm probably badly paraphrasing that. No, I think that number one is with respect to that stipulation, I think you have to read stipulations 12 through 16 really in context together, because those are really defining the issues relating to jurisdiction. So 12 says that Panico never lived in Delaware, 13 that he never visited Delaware, 14 that he doesn't own property in Delaware, and then 15 and 16 sort of flow from that and say that he was never amenable to service in Delaware, and that he was not subject to personal jurisdiction in Delaware. The way we view stipulation 16 is a couple of things. I think the way Panico's portfolio was looking at it is stipulation 16 is almost like a dictation to the court as to what the law is, and that's not the situation. What we're saying is that personal jurisdiction over Panico is not based upon him being in Delaware. That's the way we view what paragraph 16 is saying, stipulation 16 and 15, similarly dealing with amenability to service of process in Delaware. It means the service of process could not be effectuated on him within the borders of Delaware. Is there a forum selection clause where your client agreed to be sued in Delaware? The agreement certainly has a provision about where, if you were going to bring suit, where you'd need to bring it, but what's the basis for saying that that involves some kind of reciprocal consent to be sued in the state of Delaware? I don't agree that, I think you're asking the question, and my position is that he did not agree to be sued in Delaware. Two components to that. I think the district court seems to seem to think that. Then how could the long-arm statute then be triggered? If he did not agree to do that, then... First of all, the contract was made there. The payments were sent there. The cause of action arose there. But Burger King tells us that it's not enough for personal jurisdiction to have a single contract, right? That one transaction would not be enough as a matter of due process to be hauled into Delaware. Well, you have... The question is the extent to which the Delaware long-arm statute would exceed the boundaries of due process, is really what we're talking about. I think in terms of this record, though, I think there's enough here, based upon the application of the summary judgment standard to what facts we do have, to conclude that, at least for summary judgment purposes, if a hypothetical case were brought in the state of Delaware, they would have jurisdiction over Mr. Panico. But I think that goes into really what I think is Portfolio's argument, and misses, I think, the point of both with the Delaware cases and the non-Delaware cases that have dealt with the same factual circumstances here, have addressed in terms of how to resolve this issue. I think it's only if you take the position that the analysis has to be does a Delaware state court have the ability to exercise personal jurisdiction over Panico, do we even start talking about those issues, about what his contacts are with the state. So we don't need to reach that question if we agree with your interpretation of the application of Section 8117. Right, and I think the application, and really what the weight of authority of the non-Delaware cases have said, from, and we've cited it to you, it's various district courts, it's been some intermediate state appellate courts, it's been the New York Court of Appeals, they've all, under sort of a close, similar analysis, have reached the same result of saying the statute really doesn't apply to the circumstance where you sue in, you're suing a consumer in their home state, and you can exercise jurisdiction over them. Well, they've taken some different approaches, right? I'd like to ask you about the approach that was taken by the intermediate courts in Washington and Oregon, because if, where the parties, by the terms of their agreement, have agreed to Delaware's statute of limitations and all that that entails, and the plain language of this tolling provision, as applied literally, would provide for an extended period of tolling, even up to the 15 or so years in the Saudi King case. Why shouldn't that apply? And maybe it is that the UCCLA is triggered, and that you ought to then, if it becomes unreasonable, that there's that kind of escape clause that's applied, so that the forum's statute of limitation applies. But why shouldn't we, where the parties selected Delaware law, with its statute of limitations, with its tolling, take the statute at its word, and revert to the kind of analysis that Oregon and Washington did? Because, to start off with, it's because the Delaware Supreme Court doesn't apply it based upon its plain language. It interprets it and applies it based upon its purpose. But that goes back to Judge Minowsky's question about the, in Saudi we have, or maybe if it's the judge's question, as to this extended period where the Delaware Supreme Court seems to say, in fact, it is going to apply it literally, even with a result that might on its face seem unreasonable as to the extent of the tolling. Are you referring to the same as, I don't agree that that's what Saudi Basics says. Saudi Basics, I mean, we've turned to the language, the second sentence says, in those circumstances where, basically where the defendant is outside the state and not otherwise subject to service or process, that in those circumstances the statute of limitations is tolled until the defendant becomes amenable to service or process. So the question always turns upon amenability to service or process. Service or process in Delaware, right? That's not what the Supreme Court said in Saudi Basics. It didn't add in Delaware to that sentence. But it doesn't distinguish which meaning it's giving to that phrase, does it? That's true, but no Delaware court has to ever consider whether or not the application, all the Delaware cases we're dealing with, was dealing with the application of this statute in the Delaware court. That question was never presented to these courts. That's why the Delaware cases provide a backdrop, but don't dictate the result. And that's why I think the cases, I mean, obviously there is a split. There's two cases from the Intermediate Part Courts in Washington and Oregon. But the rest of the cases have said is, we don't look at the literal terms. Clearly, when the statute says, out of the state, and then later on into the state, the defendant coming back into the state, that what the Delaware courts view that as as meaning is, a mean ability to service a process. And I mean, a mean ability to service a process sort of has two components. One of which is, is it within the court's power, in other words, is the impersonal jurisdiction. And the second one is, is the ability to serve process. And so the statute goes on to say is, when the person comes into the state, they say in such matter that by reasonable diligence, the person can be served. So there's some notion of reasonableness once you get into that, that discussion of the statute itself. But our view of this is that, as many of the cases, let me go back to, because we talked about that there, there are varying reasons given by the courts, the non-Delaware courts. But they sort of fall into, I think, three different reasons which are pretty much related. So the courts say that the tolling only applies when the defendant has some prior connections with Delaware. And I read that to me, and we submit that that's what the courts were referring to was, where you had a Delaware defendant who then left and then returned to the state. Then you've got the ones that say that the statute there is applied to protect persons who seek to sue in Delaware from defendants who have made suing in Delaware difficult or impossible. And then the third line says that you only apply it when the case is actually filed or capable of being filed in Delaware. And those cases then talk about the FDCPA venue provision, saying you can't file them in Delaware when the defendant is not there. And as a result of those analyses, they say that statute was not intended to apply and does not apply to cases like the Panico case, where he was sued in his home state, where Portfolio is obviously suing other people as well. That's what they do, is to collect debts. And they come into the state of New Jersey, and they very readily can serve process. So the purpose behind the statute is satisfied because they're not being frustrated as to their inability to be able to prosecute their claim. You then have us interpret the Delaware statute of limitations in effect to have two very different limitations periods. One in Delaware, where you'd say the tolling provision applies, and a different one outside of Delaware. Right? No, I think they are consistent. For example, to take sort of perhaps a silly but an extreme example, what if they never sued Mr. Panico, and at some point, I don't know, 20, 30 years from now, he retires, and he retires to Delaware. If they sue him then in Delaware, the Delaware courts, I think, under the line of cases that start with, you know, with Hurwicz, where they say it is, as to a non-resident motorist, that the statute of limitations did run, even though the non-resident defendant was not in Delaware. In other words, I think that at that time, 30 years from now, when the Delaware court is faced with that, they're going to say, wait a second. But the reason it ran in Hurwicz was because that non-resident motorist statute provided for long-run jurisdiction. So service was, in fact, possible under the terms of the statute. Why wouldn't they apply Sawney Basic and say, 15 or 20 years, we've seen this case before? Because Sawney Basic involved someone who could not be served with process at all. And here, Mr. Panico could readily be served with process as someone served with process. Is your approach that it's service in the forum state, the ability to be served in the forum state that matters, or in any forum state outside of Delaware? For example, if PRA's preference was to sue in New York, not New Jersey, and 5 or 10 years from now, and your client moved into New York, where previously there was not a jurisdiction over him, at that point, would the tolling provision have kicked in, because previously he wasn't amenable to suit in that forum state? The tolling would not kick in when, if we ignore the non-Delaware cases that we cited, and their sort of more limited view on the application of the statute. So if we put those aside, and we now say, okay, the question is, is he amenable to service of process? I think it would boil down to a different set of facts than what we have here, which is, if for some reason, Portfolio was not an entity that could reasonably pursue a claim where Mr. Panico was, you know, if Mr. Panico moved to, you know, halfway around the world, and they were unable reasonably to serve him, tolling might apply. But because they can reasonably do it, the purpose of the statute has really been effectuated, and so therefore, there should be no tolling. Because they can do it anywhere outside of Delaware? In other words... They can sue him where he is, which is what, being at that collective, they're required to do. And because they can do that and effectuate service of process there, their ability to sue within the time frames of the statute of limitations have not been frustrated. Thank you. I have one other question before I know your time is up, but I have one other question, and that deals with the New Jersey statute of limitations, the New Jersey statute of limitations. PRA has argued in the alternative that really what New Jersey should do is apply New Jersey's statute of limitations, which is six years, so that the action was not untimely. Was that issue properly presented to the district court? The issue was presented to the district court on the assumption that Delaware law apply. Our position, and we've tried to argue it, and give some background in the briefing, is that our view is that under New Jersey's conflicts rules, it would apply Delaware statute of limitations in these circumstances. Thank you. Mr. Anthony. You may proceed. Please, the court. I'm David Anthony from Trautman Sanders, and I represent the Appalachian Portfolio Recovery Associates LLC. Before we get started, the court raised a couple of questions that I thought I might just respond to briefly. The court talked about the choice of law, choice of a form provision. On Appendix A-54, it has a choice of law provision, but the choice of form provision is a one-way provision. It says, quote, you agree that any litigation brought by you against us regarding this account or this agreement shall be brought in a court located in the state of Delaware. So it's not a general choice of form provision. I want to make sure that you were clear on that. Secondly, I want to follow up on what the court said. From our perspective, this case falls right in line with the Saudi Basic case. I respectfully disagree with Mr. Stern to suggest that in Saudi Basic, the Delaware Supreme Court did not directly deal with the issue of an out-of-state defendant who then comes into state, and I completely disagree with the notion that this amenable disservice can be anywhere in the world. The point of the statute and the point of the jurisdiction in Delaware is so that they can have control over the person and exercise jurisdiction over the person. He was served in this case, right, by you folks? Mr. Panica was served in the underlying collection action yesterday. While he was living in New Jersey. While he was living in New Jersey, yes. So why isn't this case as simple as reading Hurwicz to stand for the proposition that because he was amenable to service or because he was served, there's no total? I think you have a different service scenario in Saudi. In this case, we have an abutting state. Well, I would agree with you that he was served. I would respectfully disagree with you on two points. One, as to Hurwicz, as we pointed out in our papers, Hurwicz was not a case where the Delaware Supreme Court interpreted Section 8117. As the court pointed out, that was based upon the Delaware had a statute that allowed substitution of service, and that's what the ruling was. Not 8117. So the statement that's in there, that Mr. Stern has taken, is one that it certainly helps his argument in his mind, but it is not a holding of the case. The second point is, as it relates to the subsequent cases, say in Saudi Basic, and I brought up with me, if you refer to page 16 of the decision, the court said, we further conclude that independent of the borrowing statute, the Delaware statute told any limitations, period, until SABIC commenced this action in July 2000, because before that time, SABIC was not amenable to suit in Delaware, and therefore was, quote, out of state for tolling statute purposes. So in our view, Saudi Basic rejects that second argument that you just raised. Similarly, not only did Hurwicz not deal with 8117, but the sort of notion that there's an absurd result, what does the absurd result mean? One could argue that a 20-plus year statute of limitations tolling period in Saudi Basic was absurd, and in fact, some of these other judges outside of Delaware may well have drawn that conclusion. Including the New York Court of Appeals. Including the New York Court of Appeals, although that was even more complicated, because they adopted borrowing statutes, and they looked at New York law, in an attempt to not simply leave this as a Delaware law issue. But let's look at Saudi Basic. If Saudi Basic was a case where the defendant was a Saudi company, and whether they were amenable to service outside of Delaware is irrelevant. They then voluntarily introduced themselves back into Delaware. The suit is filed timely within three years. More than 20 years had passed. So the Supreme Court of Delaware was acutely aware that more than 20 years had passed, and said, that's fine. In Saudi Basic, the Delaware Supreme Court did not say, that's absurd. But why doesn't that just tell us how the Delaware Supreme Court would apply this tolling provision within the boundaries of Delaware? And both Hurwitz and Saudi Basic are about cases where the plaintiffs chose the forum of Delaware. And why isn't it perfectly consistent with those cases to interpret the tolling provision to mean that if folks choose to wait as plaintiffs, and take their chances on whether someone is going to become amenable to service in Delaware, they may be able to benefit from that tolling provision. But outside of Delaware, that tolling provision was never intended to apply. Why shouldn't we interpret it that way? I think it's a fair question, but I think it's a theoretical question, because you have to start with the plain language of the statute. And as the district court ruled, the statute doesn't simply say resident. It speaks to any person. And there's no limited language in the statute that would say, this only applies in the state of Delaware. That has been some language that has been added on, and as you heard Mr. Stern say, there's been any number of theories that have been added on to the statute. And so the way that I read the statute, the statute does not have the words in there, and this shall only govern for actions brought in the state of Delaware. Well, that's true, but on the other hand, we have the Delaware Supreme Court instructing us that when we are looking at a statute, that if the application of it would render unreasonable or absurd results, that the statute then can be deemed ambiguous. And at that point, what may well be dictum in her wits would seem to come into play as to how we ought to interpret the ambiguity in the tolling provision. I don't think that's a fair point, although I think that touching upon what you said earlier, so what do you do? And what Oregon and Washington did was to look and sort of make some decision and say, does this violate some public policy within our states? And courts always have the right to do that. So one of the things that troubles me about some of the non-Delaware decisions is that they don't look at what the actual result was to see whether it was absurd. You know, in this situation for Mr. Panico, it's much, much less egregious than it was for Stoudy Basic. And it's right in line with what was in the Delaware Supreme Court found was completely permissible in the Brochman case, which we cited in our papers, which was a couple of years that the FDIC took over a loan for somebody that was in Pennsylvania. So to me, that kind of separates the issue into two. One, you've got this sort of length of time issue. And on the length of time issue, Delaware Supreme Court has said a couple of years or 20 years is perfectly okay. If you want to kind of tackle the second issue, which is, okay, well, so what do we do outside the state of Delaware? My view is, number one, the plain language of the statute. It is what it is. And the Delaware Supreme Court is where the Delaware legislature is fully aware that Delaware law has been applied all across the country. If they didn't like it, they could change it. But secondly, if... Why would they want to change it if it's benefiting those who may be setting up their businesses there or incorporating there? So why would they care that a Pennsylvania resident gets sued 20 years later for a credit card debt and you say it's timely because never had any connection with Delaware? That's a fair question, Judge, but I would be remiss to guess why legislatures are motivated to change any statute. That's fair. My point is, the statute means what it means. And there have been a number of opportunities and decisions that have been around that if they truly felt that there was something wrong, after they had already decided that their interpretation was not absurd, in Brosman and Sallie Basic, they could have done that. But then to come back to your point, so if you have a problem with it on an individualized basis and you want to step outside the circumstances of the individual person here. And so I think this court could rule, we don't really care what the theoretical absurd result argument is, it's not absurd here. You're talking a year, a period of time, and it's still within the New Jersey Statute of Limitations. But as to the category of cases that are brought under the FDCPA, where it has to be where it was signed or the debtor is a resident, that means for the plethora of credit card and other kinds of debt agreements that may be subject to Delaware law, that non-residents for those types of cases who are supposed to be protected by the FDCPA would, in fact, be indefinitely waiving their right to assert statute of limitations defense. How could that not be an absurd result? Well, let me respond. Mr. Stern gave a little background because the question was whether or not the party, you know, we had raised the point about New Jersey law and I would say that was not an issue that was expressly raised with the court. The point of this is that from PRA's perspective, New Jersey law governs and it's a six-year statute of limitations. Mr. Stern disagrees and wanted to argue this Delaware issue. So rather than get into the complex of law issue, we also felt that we were right on the Delaware issue, which is why we teed that up that said assuming Delaware law applies, then this is the analysis and that's why we have these stipulations and the issues are narrowed to that. But to come back and answer your question, assuming that there's a six-year statute of limitations and assuming in New Jersey and assuming that the FDCPA requires the defendant to be sued where they are, if PRA were to rely on the tolling provision in Delaware to go in New Jersey and go beyond six years, in my view that would be a different question, but that's not what happened here. This may sound like a cop-out, but would it make sense for us to certify this question to the Delaware Supreme Court? You know, I thought about that and, you know, in my view that's a better answer than guessing as to what is an absurd result. I mean, you know, the court has pointed out and they are, you know, we've acknowledged their decisions are all over the map for all of the reasons, you know, you can only bring it in state, you can only bring it when there's a connection to the state, whether it's amenable to service, you've got choice of law issues such as in Washington, Oregon, with uniform conflicts of law statute, there's restatement issues that can fold into all of this. So if we did go down that road, what question would we send them? Well, you know, it depends who you ask. I mean, because one question could be does Section 8117 apply to its literal meaning and, you know, despite the potential effect of having the tolling never be subject to any limits. That's one question. A second question could be whether it applies outside the state of Delaware. Another could be whether or not it's subject to having service of process be amenable in Delaware, which seems to be one of his arguments. So, you know, in my view, if you were to certify the question based upon Saudi BASIC and as applied to this case, the Delaware Supreme Court would say this is perfectly in line with what happened in Bozeman and Saudi BASIC, no thanks. There's not a single case that has applied this tolling provision in the way that you ask us, at least as your first line of argument, to apply it, right? Even the two that in Washington and Oregon looked at it from a more literal perspective than resorted to their escape clause in the EZCLA. And every other court that has looked at this has declined to adopt the interpretation you're asking us to espouse. Under those circumstances where there's been pretty uniform treatment of the tolling, and an unwillingness to undertake the indefinite tolling that you're asking, why is it a close enough question for us to consider certifying? Again, I want to be clear, I'm not opposing the issue of certification. I was simply trying to provide my thinking on that. There are more cases outside of Delaware that have raised issues about that. I can't put my fingers on it, but I feel like we did at least cite one case where a case outside of Delaware relied on the tolling provision to apply it literally. But I might be getting that confused with the cases in Oregon and Washington, where there were these conflict issues that came up as they began to unravel that and go down that path. A lot of these cases have a lot of, I've spent too much time reading them, have a lot of bold statements that are made that seem to pick up language from other cases. But then when you get down to the analysis, they seem to say on the one hand, it applies literally, and then they say, well, we're not going to do that. If you're asking us to look at the intent of the Delaware legislature, what significance should we attach to the fact that, as you point out in your brief, the tolling provision is one that goes back to the 1800s. Borrowing statutes for Delaware and generally came into play a century later. Under those circumstances, doesn't that tell us that the tolling provision contemplated a period where it was not expected that it would be exported to other foreign states, that it really was intended to apply within the borders of Delaware? I'm not sure I would agree with you in the sense that what you're suggesting is that somehow you would vary from the literal language of 8117. I've not seen any indication from the Delaware Supreme Court that that's what they should do. If we were to disagree with the holding of the district court on the effect of this tolling provision, where does that leave us with respect to the New Jersey statute of limitations? What I would expect to happen is that ultimately when the case goes back, the way that the case is, there's no question that if this case is governed by New Jersey law, even with the tolling, we're within the statute of limitations. One of the stipulations is it was more than three years but less than six. So if it's under New Jersey law, we win. If it's under Delaware law, if it's unclear, if the court is going to be inclined to reject the argument of the Delaware law, which really what that means is that both under New Jersey law and Delaware law it's timely, ultimately it would go back to the court and the issue as to whether New Jersey law applied, Delaware law applied, would have to be sorted out by the district court. That would be a reason for me to be reluctant to certify it to the Delaware Supreme Court because it's not going to really resolve the case. That's just speaking out loud. The Delaware provisions we're looking at here, you're sort of suggesting it's all or nothing, Delaware and New Jersey, but the Delaware provisions are really two different provisions. We've got the baseline statute of limitations, then we've got 8117's tolling provision. If we were to interpret 8117 to include that it didn't apply in this way, why would that require us to resort to New Jersey as opposed to just saying Delaware, the parties chose Delaware as their choice of law, Delaware's three-year statute of limitations applies, and we've concluded the tolling provision for whatever reason does not. Wouldn't the statute of limitations itself under Delaware law still be intact? I don't believe so. Because if you look at not only the Delaware statutes, but as well the way that statute of limitations have been read, including by the United States Supreme Court, the Wilson v. Garcia case, statute of limitations are to be read in their entirety. One of my issues with some of these cases is how they've picked and chosen. On the one hand, they don't want to have the state law, but then they want to find one piece of the statute not proper, but then resort to the other part of that. I think it's error to pick one piece of that and not the other. That's not what they did in the Avery case. In the Avery case, which is out of the Ninth Circuit, they ultimately, if my recollection is correct, pulled both the tolling and the statute of limitations as part of their analysis,  I see my time is up, unless there's any further questions. Thank you. Thank you very much. Mr. Anthony said that in referring, in talking about sorting basic, is that sorting basics and mutability of suit really doesn't matter. I think that was, in fact, it's just the opposite. I think what's critical to that, what distinguishes a sorting basic and Brossman case, and Brossman is sort of a hybrid case dealing with when it applies and when it doesn't apply in a Delaware court, but sorting basic and mutability of suit, sorting basic is just like Hurwicz, where they decided, in one case, they decided the defendant wasn't the inability to serve his process, so there was no tolling. In the other, there wasn't. It really is the critical distinction. I do want to mention that if the court is considering certifying, and it's not something we're suggesting, but certainly not at the court's discretion, that the certification goes to the state of New Jersey, not to the Delaware Supreme Court. This is an issue of how New Jersey would apply Delaware law under New Jersey's conflict rules, and I think that's where it really is the binding, is really the appropriate court as between the two. Wouldn't New Jersey be in the same position, then, of looking to Delaware and considering certification to figure out how Delaware would interpret its tolling provisions? Certainly, theoretically, you would say that the New Jersey Supreme Court should be doing, in essence, what we're asking this court to do, which is decide what is Delaware law, what's the meaning of 8117, and how does it apply in these circumstances, but it never gets applied in a Delaware court, and the only reason it does apply, to one extent, in a very general sense, we agree with what Mr. Anthony said, which is New Jersey law controls, but it includes New Jersey's conflicts of law rules, and as a result, which enforces the contract and, therefore, which chooses Delaware law, and in doing so, applies Delaware statute of limitations regime. We disagree with this. I think it's sort of an easy notion to say that we're picking and choosing. We're not picking and choosing. We say that 8117 no more applies than, I think it's 8118, which deals with tolling and statute of limitations for infants. It just doesn't apply to the circumstances here. So, in that respect, but I do think it goes, the appropriate way to do it is to go to the New Jersey Supreme Court, not to the Delaware Supreme Court, and I want to comment just on Avery. We touched upon it in our brief. Avery took pains to make very clear about how limited the scope of their decision was. They were just responding to an argument made by the consumer in that case that under Oregon's choice of law regime, an Oregon court would treat the New Hampshire tolling statute by replacing the word that state in that statute referred to the state of Oregon instead of the state of New Hampshire. That's a very limited narrow, and they really took pains to say that they weren't deciding anything else other than to reject that argument. So I think that that was very, no, my time is up. No, thank you. Thank you very much. If I take the matter under advisement.